# A

**STATE OF RHODE ISLAND**
**PROVIDENCE, RI**

**SUPERIOR COURT**

**NITA FAYE JOWERS,** :
:
**Plaintiff,** :
**vs.** :
:
**DAVOL INC. and C. R. BARD INC.,** :
:
**Defendants.** :

**Civil Action No:** PC 08-3719

# COMPLAINT

## Parties

1. Plaintiff NITA FAYE JOWERS ("Plaintiff") was and is a resident of the County of Gibson, State of Tennessee.

2. Defendant DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Composix Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Composix Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Composix Kugel Patch. BARD at all times

relevant did substantial and continuous business in the State of Rhode Island.

**Jurisdiction**

4. The Court has subject matter and personal jurisdiction over the issues and the parties to this cause of action. DAVOL is a resident of the State of Rhode Island who manufacturers the product in Rhode Island. DAVOL's principal place of business is the State of Rhode Island. Plaintiff brings this complaint solely under state law and not under federal law and specifically not under the United States Constitution, or any of its amendments. Plaintiff believes and alleges that causes of action exist under the hereinafter set out state law claims for the conduct complained of herein.

**Facts**

5. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Plaintiff's body.

6. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Plaintiff's body.

7. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

8. Immediately after the Composix Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and Composix Kugel Patch defects. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Composix Kugel Patches from Plaintiff, Plaintiff's physicians, and the general public.

9. After the defective and dangerous Composix Kugel Patch was already placed on the

market, Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from Plaintiff, Plaintiff's surgeons, and the public at large.

10. On or about November 10, 2005, a Composix Kugel Patch [Lot No. 43EPD310 and Product Code 0010202] was used to repair Plaintiff's hernia defect.

11. The Composix Kugel Patch hernia repair product implanted in Plaintiff was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

12. No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring in the Composix Kugel Patch. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. DAVOL and BARD were aware these weld issues had existed from the time the Composix Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Plaintiff, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Composix Kugel Patches using the memory recoil ring.

13. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Composix Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Composix Kugel Patch distribution hold. DAVOL and BARD actively and intentionally chose not to immediately inform Plaintiff, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Composix Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Composix Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

14. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

15. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

16. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

17. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

ii. misidentified numerous Composix Kugel Patch complication events;

iii. failed to apply the product quality hold and release procedure on a timely basis;

iv. failed to properly follow the procedures for conducting design validation review;

v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Composix Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Composix Kugel Patch sizes in the December 2005 recall;

vi. failed to provide full information which they knew regarding numerous Composix Kugel Patch complaints;

vii. failed to actually perform strength testing on memory recoil rings for all sizes of Composix Kugel patch before putting them into the stream of commerce;

viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Composix Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

18. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

19. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

20. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled nature of the Composix Kugel Patch and memory recoil ring which had been implanted until well after discovering of Bard's and Davol's FDA recall of the product.

21. Neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of the Composix Kugel Patch or that this unreasonably defective condition was the cause of Plaintiff's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Composix Kugel Patches and the subsequent recalls.

22. The Composix Kugel Mesh that was used to repair Plaintiff's hernia defect had been subsequently recalled.

23. The Composix Kugel Mesh that was used to repair Plaintiff's hernia defect was defective.

24. As a direct and proximate result of the defective condition of the Composix Kugel Mesh, Plaintiff suffered severe persistent abdominal pain, which was accompanied by abdominal distention and abdominal tenderness.

25. On or about May 24, 2007, due to Plaintiff's aforesaid condition, Plaintiff underwent exploratory surgery. Physicians determined that the Composix Kugel Mesh had adhered to the Plaintiff's intestines. Plaintiff's surgeons are unable to remove the Composix Kugel Mesh, because they believed that it may cause more damage to excise the patch rather them leave it in.

26. BARD and DAVOL are liable for the bodily injuries, pain and suffering, ascertainable economic loss and other damages which were sustained by Plaintiff, in an amount to be proven at trial.

27. Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

28. Plaintiff has incurred substantial medical bills and Plaintiff has suffered loss of other monies.

29. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result

of the high complication and failure rate of the product.

30. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

31. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

32. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Composix Kugel Patch.

33. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

34. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Composix Kugel Patch sizes and chose not to issue a recall on all Composix Kugel Patches in the face of the high degree of complication and failure rates.

35. BARD and DAVOL's aforementioned conduct was committed with wanton, knowing, conscious, deliberate and malicious disregard for the rights and safety of the public, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish BARD and DAVOL and deter them from similar conduct in the future.

## COUNT I
### Negligence

36. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

37. Defendants DAVOL and BARD were negligent to Plaintiff in the following respects:

38. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

39. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

40. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

41. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Plaintiff.

42. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

43. Defendants DAVOL and BARD breached their duty by failing to comply with state

and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

44. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Plaintiff's hernia repair surgery was defective and failed, resulting in Plaintiff suffering pain and harm.

45. As a direct and proximate result of DAVOL's and BARD's negligence, Plaintiff has suffered injuries and damages.

46. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**COUNT II**
**Strict Product Liability**

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

48. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects:

49. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Composix Kugel Patch for hernia repair surgery.

50. At all times mentioned, the Composix Kugel Patch was substantially in the same

condition as when it left the possession of DAVOL.

51. The Composix Kugel Patch implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

52. The Composix Kugel Patches, like the one found in Plaintiff, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Composix Kugel Patch as designed and manufactured was unsafe to Plaintiff;

iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;

iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying,

testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

53. Plaintiff's Composix Kugel Patch was defective and failed while in his body, causing him to develop serious bodily injury, which required subsequent and significant medical treatment.

54. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**COUNT III**
**Negligent Infliction of Emotional Distress**

55. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

56. Defendants DAVOL and BARD are liable to Plaintiff for the negligent infliction of emotional distress in the following respect:

57. Plaintiff suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

58. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

59. Therefore, DAVOL and BARD are liable to Plaintiff.

60. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**COUNT IV**
**Intentional Infliction of Emotional Distress**

61. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

62. Defendants DAVOL and BARD are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:

63. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

64. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Plaintiff.

65. Therefore, DAVOL and BARD are liable to Plaintiff.

66. DAVOL's and BARD's conduct in continuing to market, sell and distribute the

Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

## COUNT V
**Breach of Implied Warranty**

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

68. Defendants DAVOL and BARD are liable to Plaintiff for their breach of implied warranty in the following respect:

69. DAVOL and BARD sold the Composix Kugel Patch which was implanted in Plaintiff. DAVOL and BARD impliedly warranted to Plaintiff, his physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

70. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

71. Plaintiff, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

72. When the Composix Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used

as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

73. Plaintiff suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**COUNT VI**
**Failure to Warn**

74. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

75. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch to the hospital for hernia repair surgeries.

76. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Plaintiff received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

77. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, which would require further and significant medical treatment.

78. The dangerous and defective conditions in the Composix Kugel Patches existed at the

time they were delivered by the manufacturer to the distributor. At the time Plaintiff had his hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

79. Plaintiff did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

80. Plaintiff suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

81. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**COUNT VII**
**Fraud**

82. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

83. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

84. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Plaintiff received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse

consequences associated with the Composix Kugel Patch.

85. BARD and DAVOL was aware of the dangerous and defective condition of the products and intentionally withheld this information from Plaintiff, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

86. BARD and DAVOL fraudulently presented to Plaintiff, Plaintiff's physicians, and the general public that the Composix Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Composix Kugel could and would cause injuries such as those suffered by Plaintiff.

87. Plaintiff and Plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Composix Kugel Patch to be implanted.

88. As a direct and proximate result of Plaintiff's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Plaintiff was seriously and permanently injured

89. As a direct and proximate result of the acts of the Defendants, Plaintiff has suffered, and will continue to suffer great pain and suffering, mental anguish, a loss of consortium, society, companionship, support, and dependency, and was otherwise damaged.

90. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**COUNT VIII**

**Gross Negligence**

91. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

92. BARD and DAVOL was grossly negligent in designing, testing, manufacturing, marketing, labeling, selling, distributing and/or warning about the Composix Kugel Patch by:

i. failing to provide adequate warnings with the Composix Kugel Patch regarding its possible risks and adverse effects as well as the comparative severity and duration of such adverse effects;

ii. failed to exercise due care in designing, developing, and manufacturing the Composix Kugel Patch so as to avoid the aforementioned risks to individuals;

iii. placed unsafe product into the stream of commerce; and

iv. was otherwise grossly negligent.

93. BARD and DAVOL continued to promote the efficacy and safety of the Composix Kugel Patch, while simultaneously providing little or no adequate warnings and downplaying any risks, even after it knew of the risks and injuries associated with the Composix Kugel Patch's use.

94. As a direct and proximate result of BARD and DAVOL's aforesaid wanton and malicious acts and omissions, Plaintiff sustained a serious bodily injury.

95. By reason of the foregoing, BARD and DAVOL is liable for bodily injuries, pain and suffering, ascertainable economic injuries and other damages which were sustained by Plaintiff, in an amount to be proven at trial.

96. BARD and DAVOL's aforementioned conduct was committed with wanton, knowing, conscious, deliberate and malicious disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at

trial that is appropriate to punish BARD and DAVOL and deter it from similar conduct in the future.

**RELIEF**

**Wherefore**, for each of the above described Counts, Plaintiff respectfully requests judgment in Plaintiff's favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for hers costs.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

PLAINTIFF[S]
By Plaintiff's Attorneys,

Donald A. Migliori (#4936)
Vincent L. Greene (#5971)
Leah J. Donaldson (#7711)
MOTLEY RICE LLC
321 South Main Street, Suite 200
Providence, RI 02903
401-457-7748
401-457-7708 Fax

W. Mark Lanier, Esq.
Richard D. Meadow, Esq.
David Kuttles, Esq.
THE LANIER LAW FIRM, PLLC
126 E. 56th Street, 6th Floor
New York, New York 10022
212-421-2800
212-421-2878 FAX

Fred Thompson, III
Rhett D. Klok
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216-9450 Fax

Teresa C. Toriseva
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV 26003
304-238-0066
304-238-0149 Fax

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
312-346-2222
312-346-0022 Fax

# State of Rhode Island and Providence Plantations

MAY 2 2008

SUPERIOR COURT

**[X] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [ ] NEWPORT**

NITA FAYE JOWERS

**Plaintiff**

DAVOL INC et al.

**Defendant**

CIVIL ACTION NO. PC 08-3719

***Summons***

**CR BARD, INC.**
**c/o Judith Reinsdof**
**730 Central Avenue**
**Murray Hill, NJ 07974**

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said superior court in the county indicated above. You are hereby summoned and required to serve upon **Donald Migliori, Esq.** Plaintiff's attorney, whose address is **321 South Main Street, Providence, Rhode Island 02903** an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will there-after be barred from making such claim in any other action.

CLERK

Dated: May 27, 2008

**(Seal of the Superior Court)**

**S-135** (REV.4/99) C.I.-153

MAY 27 A 11:51

# State of Rhode Island and Providence Plantations

……………………………………,SC

## PROOF OF SERVICE

I hereby certify that on the……………………………………day of………………………I served a copy of this summons and a copy of the complaint received therewith upon ……………………………………………………………

……………………………………………………………………………………………………………

in the following manner:

By delivering a copy of the summons and complaint to him personally.

By leaving a copy of the summons and complaint at his dwelling house,………………………………………

……………………(address)…………………………………………………,with a person of suitable age and discretion then residing therein.

By leaving a copy of the summons and complaint at his usual place of abode,…………………………………

…………………………………………………………………………with a person of suitable age and discretion then residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law

to receive service of process, namely………………………………………………………………………………

Such agent being one designated by statute to receive service, further notice as the statute requires was given as follows:

……………………………………………………………………………………………………………

……………………………………………………………………………………………………………

……………………………………………………………………………………………………………

Sheriff's Fees

Travel . . . . . . $…………………

Service . . . . . $…………………

$…………………

………………………………………

**Deputy Sheriff**

**CIVIL ACTION**

**FILE NO.**

**SUMMONS**

**SUPERIOR COURT**

VS.

Davol, Inc. and C.R. Bard, Inc

**ATTOTNEY FOR PLAINTIFF**

Donald A. Migliori, Esq.
MOTLEY RICE LLC
321 South Main Street
Providence, RI 02903

Note: Returnable to Plaintiff's Attorney forewith after service. Proof of service to be filed within time during which the person served must respond.